IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **DOROTHY HALL,** | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | |
| **PHILLIPS 66,** | § § § | |
| **Defendant.** | § | **(JURY TRIAL DEMANDED)** |

United States Courts
Southern District of Texas
FILED
DEC 27 2021
Nathan Ochsner, Clerk of Court

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, Plaintiff Dorothy Hall filing her Original Complaint complaining of Defendant, Phillips 66, and in support thereof would show as follows:

### I.
### JURISDICTION, PARTIES, AND VENUE

1.1 This Court has jurisdiction over the causes of action alleged by Plaintiff pursuant to 28 U.S.C. Section 1331 (federal question jurisdiction) and Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

1.2 Plaintiff resides in Harris County, Texas. Plaintiff is protected by Title VII. Plaintiff Hall was at all relevant times an employee within the meaning of the applicable statute.

1.3 Defendant operates in Sweeny, Texas. Defendant was at all times Plaintiff's employer within the meaning of the aforementioned applicable statute.

1.4 Defendant engaged in an industry affecting commerce and employed more than (500) regular employees.

1

1.5 The employment practices alleged to be unlawful herein were committed within the Southern District of Texas, Houston Division. Venue is appropriate in this Court.

**VICARIOUS LIABILITY – RESPONDEAT SUPERIOR**

1.6 Whenever in this complaint it is alleged that the Defendant did any act or thing, it is meant that the Defendant's owners, supervisors, agents, servants, employees, or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendant, or was done in the normal and routine course and scope of employment of Defendant's owners, supervisors, agents, servants, employees, or representatives.

1.7 The acts of management were performed while in the employment of the Defendant, to further the Defendant's business, to accomplish the objective for which said managers were hired, and within the course and scope of that employment or within the authority delegated to said employees.

## II.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

2.1 Plaintiff Hall filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission on or about May 18, 2020. In that Charge, No. 460-2020-02181, and any amendments and/or attachments thereto, Plaintiff Hall asserted that she was discriminated against on the basis of sex and in retaliation for opposing such discrimination.

2.2 Defendant refused to conciliate and resolve this dispute.

2.3 Therefore, Plaintiff was forced to file this suit in order to protect her employment rights. Plaintiff has exhausted her administrative remedies and files this suit within the statutory limitations period.

## III.
## FACTUAL BACKGROUND

3.1 Dorothy Denise Hall has worked in a male-dominated industry since she was about eighteen (18) years old.

3.2 Plaintiff Hall began working for Team Industrial Service in or about June of 2015.

3.3 Team Industrial Service sent its employees out to various plants for a host of jobs.

3.4 In or about December of 2016, Team Industrial Service outsourced Plaintiff Hall to work for Arkema, Inc. as an inspector. Her duties included but were not limited to inspecting piping, vessels, and wells, among other things.

3.5 Plaintiff Hall was the only female inspector at the Arkema plant.

3.6 She was supervised by managers and supervisors from both companies.

3.7 Specifically, Plaintiff Hall was supervised by Team Industrial Service's District Manager Shawn Mullins (male).

3.8 She also worked under two Team Industrial Service American Petroleum Institute ("API") Inspectors: Moses Kormah (male) and Adeniyi Buraimoh (male).

3.9 Moses Kormah was Team's Lead API at the Arkema plant.

3.10 Mr. Buraimoh was specifically assigned to acclimate Plaintiff Hall to her duties.

3.11 Yet, early on into her tenure at the Arkema plant, API Buraimoh (commonly called "AB") made his feelings known about females working in the field.

3.12 Inspector Buraimoh would frequently ask Plaintiff Hall, "Why are you working in this field?"

3.13 He would add, Plaintiff Hall is pretty and "This is not a field for women," Instead, Inspector Buraimoh encouraged Plaintiff Hall to go "work in safety."

3

3.14   Inspector Buraimoh repeated such comments so often that Plaintiff Hall made her concerns known to Lead Inspector Kormah. Lead Inspector Kormah commented that Plaintiff Hall was indeed "too pretty" to be in this field but that Inspector Buraimoh should not have said those things to her. Lead Inspector Kormah added that Plaintiff Hall should work in management and implied she should work in safety as well.

3.15   Lead Inspector Kormah also addressed Plaintiff Hall's concerns with Inspector Buraimoh.

3.16   In response, Inspector Buraimoh became cold and distant towards Plaintiff Hall. In fact, he would very often refuse to work with, or even talk to, her. Inspector Buraimoh justified his refusal to work with Plaintiff Hall by saying that women should not work in the field.

3.17   Plaintiff Hall felt isolated.

3.18   When Inspector Buraimoh would speak to Plaintiff Hall, he did so condescendingly. And, he continued to question why females like Plaintiff Hall would want to work in the field versus in the safety department.

3.19   Plaintiff Hall once again made her concerns known to Lead Inspector Kormah.

3.20   Lead Inspector Kormah's response was that such was just how Inspector Buraimoh behaved. Too, Lead Inspector Kormah promised to work with Plaintiff Hall himself when he "could" given that he was both a Lead and an API.

3.21   This was not a workable solution because Lead Inspector Kormah was not always available. And, Plaintiff Hall, Inspector Buraimoh, and Lead Inspector Kormah were the only inspectors.

3.22   Inspector Buraimoh continued to lash out at Plaintiff Hall.

3.23   Things were not improving. Plaintiff Hall next made an outcry to Team Industrial Service's District Manager Shawn Mullins. His response was simply that he would talk to Inspector Buraimoh but that such was just how Inspector Buraimoh behaved.

3.24   In or about June of 2017, Plaintiff Hall was objectified sexually by Donald Gibson while at Arkema. Gibson (male) commented on the size of Plaintiff Hall's buttocks. It was overheard by Arkema Supervisor Steven Pittman (male). Supervisor Pittman involved Arkema Maintenance Manager Ken Joiner (male). Arkema Supervisor Jeffers Lewis (male) and Team District Manager Mullins also became involved.

3.25   After learning of the sexual harassment that occurred between Plaintiff Hall and Gibson, Inspector Buraimoh ramped up his comments about females not working in the chemical field.

3.26   Despite the fact that Plaintiff Hall earned several industry-relevant certifications and had years of experience under her belt, she was treated differently from her male peers.

3.27   On approximately February 28, 2018, Plaintiff Hall spoke with Arkema Maintenance Manager Joiner again. She let him know that she was not being respected as a team member and did not have proper access to the computers to do her job. She specifically told him that she felt this was because of her gender.

3.28   On or about March 1, 2018, Plaintiff Hall had an eerie feeling. She decided to jot down a few notes in her personal journal about her belief that she was being targeted at work. Most of the other employees were in the field that day. Plaintiff Hall, Inspector Buraimoh, and Lead Inspector Kormah were in the office.

3.29   Plaintiff Hall felt Lead Inspector Kormah peering over her shoulder and down at her journal. She also witnessed the two inspectors whispering amongst themselves.

3.30   When Plaintiff Hall returned to her desk, she observed that her purse appeared different from how she left it.

3.31   Around the same time, another worker named Antonio asked who left a piece of paper on the copier machine. Plaintiff Hall observed that it was a copy of her personal journal.

3.32   Inspector Buraimoh looked on worriedly.

3.33   Plaintiff Hall questioned who went inside her purse. Inspector Buraimoh's response was telling. He answered, "no one went into your purse and made copies." Interestingly, that was not what Plaintiff Hall had asked.

3.34   Plaintiff Hall retorted that she was going to report such intrusion. Inspector Buraimoh then grabbed Plaintiff Hall's wrist forcefully and pleaded, "Please don't do this to us."

3.35   Plaintiff Hall told Arkema Maintenance Manager Joiner and Team Industrial Service's District Manager Mullins of the occurrences on March 1, 2018.

3.36   On March 5, 2018, Arkema Maintenance Manager Ken Joiner told Plaintiff Hall that the decision had been made along with Team Industrial Service's District Manager Mullins to end her employment at the Arkema plant because she was considered "a liability" after making two reports of gender-based discrimination and harassment.

3.37.  In the end, Plaintiff Hall had been left with sporadic employment at other jobs with Team Industrial Services.

3.38 Plaintiff Hall began working at Defendant Phillips 66 in Sweeney Texas on or about September 19, 2019.

3.39 Once again, she was the only female inspector.

3.40 Within weeks of Plaintiff Hall's hire, a Phillips 66 employee named Guys Ngassa called Plaintiff Hall a "girl" on two separate occasions in one particular day. Team's employee, Tim Metreyon, was present.

3.41 On or about October 18, 2019, Defendant's Ngassa referred to Plaintiff Hall as a "girl" again. She corrected him and told him that she is "a woman." Defendant's Ngassa then asked if Plaintiff Hall had any children. When Plaintiff Hall told him that she had no children, he said "then you're a girl." This time conversation took place in the presence of Team's Supervisor Brad Jones.

3.42 Team's Jones was quite the gentleman; he stood up for Plaintiff Hall. Defendant's Ngassa added that in his country when women talk back, they are executed. He added that women know their place. He concluded that another Phillips 66 female employee, Manager of Mechanical Integrity & Compliance Karen Fleming, knows he talks like that all the time.

3.43 Team's Jones told Defendant's Ngassa that anything he needed to say to Plaintiff Hall, Defendant's Ngassa should address him (Team's Jones). Defendant's Ngassa said, "Okay but I need the girl to come and work for me."

3.44 In the end, Plaintiff Hall told Team's Jones that she did not feel comfortable reporting Defendant's Ngassa's remarks because of what happened at the Arkema plant. She added that she could not afford to lose her job at Defendant Phillips 66.

3.45 A few days later, Defendant's Ngassa once again called Plaintiff Hall a "girl" in the presence of Team's Metreyon. Defendant's Ngassa also told Metreyon that he (Defendant's Ngassa) needed workers on his job because his work was backed up.

3.46 Later, Team's Site Supervisor Aaron Plumbley told Team's Jones that Plaintiff Hall would be a good fit to work with Defendant's Ngassa. In response, Team's Jones told Team's Plumbley about the sexist comments made by Defendant's Ngassa. Plaintiff Hall told Team's Plumbley that she did not want to report these comments because of what happened at the Arkema plant and how she was dismissed because she was deemed "a liability" after reports of sexual harassment and gender-based complaints. Plaintiff Hall told Team's Plumbley that she was "scared."

3.47 A few days later, Team's District Manager Mullins told Plaintiff Hall that he was aware of the sexist comments by Defendant's Ngassa. Plaintiff Hall told Team's Mullins of her fears of being retaliated against same as what happened at the Arkema plant. Team's Mullins told Plaintiff Hall he would report it higher up the organizational chart to Phillips 66 Chief Inspector Brandon Downs.

3.48. Plaintiff Hall spoke with Phillips' Downs. He asked if Plaintiff Hall thought it was a joke because "Ngassa jokes like that." Plaintiff Hall told Defendant's Downs about how Defendant's Ngassa added that women in his country are executed when they talk back and do not know their place. Defendant's Downs told Plaintiff Hall that he planned on informing Phillips 66 Manager of Mechanical Integrity & Compliance Karen Fleming of Defendant's Ngassa's sexist remarks.

3.49. Team's Plumbley told Plaintiff Hall that Defendant's Ngassa had been in trouble before based on inappropriate comments. He said he would let Team's human

resources Nep Reyes aware of her claims. Plaintiff Hall made it clear to Team's Plumbley that she could not afford to lose her job at Phillips 66.

3.50. Before December 2019, Plaintiff Hall received compliments about her work. For example, Team's Jones told Plaintiff Hall that she was doing a good job and took initiative. Team's Metreyon complimented Plaintiff Hall's work performance as well. Julian in safety also complimented Plaintiff Hall's work in the presence of Team's Jones.

3.51. In early December of 2019, Plaintiff Hall planned her December workload so that she could get it done before the holidays. Team's Metreyon and Plaintiff Hall worked hand-in-hand. They completed the work.

3.52. When Plaintiff Hall returned from vacation on or about January 3, 2020, Team's Plumbley accused Plaintiff Hall of not performing work from Defendant's Travis Chisholm. Plaintiff Hall kept record of her work and knew this to be untrue. Plaintiff Hall reminded Team's Plumbley that she shared her work with him as well.

3.53. Later that same day, Team's Plumbley accused Plaintiff Hall of not performing work from Defendant's Justin Matocha. Nathan (last name unknown) was present and confirmed that Plaintiff Hall turned over all work before her vacation. Just then Team's Metreyon walked up. Team's Metreyon confirmed that the work was timely done.

3.54 Plaintiff Hall became fatigued. Her concentration was compromised. She dreaded going to work. Plaintiff felt alone. She wanted to give up.

3.55  On or about January 6, 2020, Team's Plumbley accused Plaintiff Hall again of not doing some work for Defendant's Chisholm. Plaintiff Hall offered to show Team's Plumbley her proof. He declined seeing such proof.

3.56  Team's Plumbley warned Plaintiff to stay clear from the Phillips administration building.

3.57  Twice, Team's Metreyon advocated for Plaintiff Hall and the truth. He spoke to various parties and explained that all assigned work was performed timely. Team's Metreyon was adamant that any accusation that Plaintiff Hall was not performing her work was the equivalent of saying he was not performing work because they worked together. Team's Metreyon got Defendant's Chisholm to admit that he (Chisholm) did not give Plaintiff Hall such an assignment. Defendant's Chisholm apologized to Team's Metreyon. He never apologized to Plaintiff Hall.

3.58  Team's Metreyon informed Nathan (last name unknown), Team's Plumbley and others that Defendant's Chisholm's accusations had no merit by Chisholm's own admission.

3.59  Team's Mullins called Plaintiff Hall to discuss same. Mullins kept asking Plaintiff Hall to calm down. Plaintiff Hall told Team's Mullins that something bigger is happening because they are repeatedly and falsely accusing her of not doing work. Plaintiff Hall told him she felt her job was on the line. Plaintiff Hall implored Team's Mullins "to fix this." Plaintiff Hall reminded him that the last time this happened to her was at the Arkema plant. Team's Mullins acknowledged this. Plaintiff Hall even had a panic attack and was forced to seek treatment at an emergency room near her home.

3.60. When Plaintiff Hall returned to work, she shared her doctor's note with Team's Plumbley. Plaintiff Hall told Team's Plumbley that Defendant's Chisholm admitted that he did not ask her to do that assignment. Team's Plumbley said he was aware of Defendant's Chisholm's admission. Plaintiff Hall reiterated that she needed her job at Defendant Phillips 66, which is why she feared reporting Defendant's Ngassa initially. Team's Plumbley told Plaintiff Hall that Defendant liked her work ethic and wanted her to stay and work.

3.61. On or about January 24, 2020, Team's Mullins told Plaintiff Hall that Defendant Phillips 66 requested that she stay home and not return to work pending its investigation.

3.62. On or about January 27, 2020, Team's Mullins called and told Plaintiff Hall that she was terminated from Defendant's Phillips 66's site.

3.63 Defendant Phillips 66 instructed Team remove Plaintiff Hall from Phillips 66's work site.

3.64 In January of 2020 and setting aside Plaintiff Hall, Defendant Phillips 66 did not instruct Team to remove any of Team's other employees from its work site in Sweeney, Texas.

3.65 Plaintiff Hall did not have an opportunity to give her statement in response to allegations investigated by Defendant Phillips 66.

3.66 Plaintiff Hall's witnesses did not have an opportunity to give their statements in response to allegations investigated by Defendant Phillips 66.

3.67 The effect of the practices complained of herein have been to deprive Plaintiff Hall of equal employment opportunities and otherwise adversely affect her status as an employee because of her gender and opposition to discrimination and harassment.

11

## IV.
## CAUSES OF ACTION

### A. SEX DISCRIMINATION PURSUANT TO TITLE VII

4.1   Plaintiff Hall incorporates by reference the allegations of the preceding paragraphs.

4.2   Defendant, through their agents, supervisors, or employees violated Plaintiff Hall's civil rights in violation of Title VII of the Civil Rights Act of 1964, as amended.

4.3   Defendant engaged in unlawful intentional gender discrimination on the basis of Plaintiff's sex.

4.4   Defendant was aware of Defendant's Ngassa's prior bad conduct.

4.5   Defendant failed to take any action to prevent such harassment and discrimination from occurring.

4.6   Instead, Defendant justified such by saying Defendant's Ngassa was "joking" or "just like that."

4.7   Defendant's acts as alleged herein were motivated by and because of Plaintiff Hall's sex.

4.8   Further, Defendant discriminated against and harassed Plaintiff Hall in a willful manner.

### B. RETALIATION PURSUANT TO TITLE VII

4.9   Plaintiff Hall incorporates by reference the allegations of the preceding paragraphs.

4.10   After opposing such gender discrimination and retaliation based on her sex Plaintiff Hall was subsequently harassed, falsely accused of performance deficiencies, suspended, and ultimately forced to leave her position.

4.11   Defendant had no legitimate business reasons for any such acts. Each act of retaliation is in violation of Title VII's anti-retaliation provision.

4.12   As a direct and proximate result of the Defendant's willful, knowing, and intentional discrimination and retaliation against her, Plaintiff Hall has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff Hall is thereby entitled to general, compensatory, and punitive damages in amounts to be proven at trial.

4.13   The above-described acts on the Defendant's part were undertaken in violation of Title VII and proximately caused Plaintiff Hall substantial injuries and damages.

### C. **NEGLIGENT HIRING, SUPERVISION AND RETENTION**

4.14   Plaintiff Hall incorporates by reference the allegations of the preceding paragraphs.

4.15   Defendant had a legal duty as to Plaintiff Hall to hire, supervise, train, and retain competent employees including Defendant's Ngassa and those involved in her termination from its facility.

4.16   Defendant breached that duty by failing to hire, supervise, train, and retain Defendant's Ngassa and those involved in Plaintiff Hall's termination from its facility because it knew or had reason to know that such persons including Defendant's Ngassa posed a threat to the safety, wellbeing, and livelihood of Plaintiff Hall in violation of statutory and common laws.

4.17   Defendant's Ngassa and others involved in Plaintiff Hall's termination from Defendant's facility committed violations of the aforementioned statutory and common laws.

4.18   Such violations proximately caused Plaintiff Hall's injuries.

# V.
# JURY DEMAND

5.1 Plaintiff Hall requests that this action be heard before a jury.

# VI.
# DAMAGES

6.1 Defendant's conduct constitutes violations of statutory and common law. Such unlawful conduct seriously affects Plaintiff Hall in her occupation, trade and business. Because of the Defendant's unlawful conduct, Plaintiff has suffered, suffers, and will continue to suffer humiliation, mental anxiety and stress, and other damages. Plaintiff has suffered direct injury as a proximate result of the unlawful discriminatory practices, policies and procedures of the Defendant. Accordingly, Plaintiff Hall seeks all general, special, incidental, economic, compensatory, punitive, and consequential damages in an amount to be proved at trial including punitive damages.

6.2 Because of the Defendant's unlawful and tortuous conduct, it has been necessary for Plaintiff Hall to retain the undersigned attorney to represent her in these causes of action. Plaintiff has agreed to pay her attorney reasonable attorney's fees for the preparation and trial of these causes, and further for any appeal thereof should same become necessary.

6.3 Additionally, Plaintiff Hall has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve her ability to earn a living. Accordingly, Plaintiff Hall seeks all general, special, incidental and consequential damages as shall be proven at trial.

6.4 Further, Plaintiff Hall seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of

interest because of the delay in receiving the damages and to avoid unjust enrichment to the Defendant. Plaintiff Hall also seeks post-judgment interest at the maximum rate allowed by law in the event that the Defendant do not promptly tender damages assessed against them and to avoid unjustly enriching the Defendant.

## VII.
## PRAYER

WHEREFORE, premises considered, Plaintiff prays that the Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant for:

a. Permanent injunction enjoining the Defendant, their agents, successors, employees, and those acting in consort with the Defendant from engaging in any employment practice which includes discrimination on the basis of sex and in retaliation thereof.

b. All damages to which Plaintiff may be entitled pursuant to this Petition, or any amendment(s) thereto, including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at law, and equity;

c. Compensatory damages for pain and mental suffering in the past and future;

d. Punitive damages in an amount above the minimum jurisdictional limit of the Court;

e. Reasonable attorney's fees, with conditional awards in the event of appeal;

f. Pre-judgment interest at the highest rate permitted by law;

g. Post-judgment interest from the judgment until paid at the highest rate

permitted by law;

h. Costs of court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action; and

i. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Petition or by any amendment hereto.

Respectfully submitted,

_____
Dorothy Hall
4907 Callery Creek Drive
Houston, Texas 77053
dorothy.denise@yahoo.com